**FILED**
CLERK, U.S. DISTRICT COURT
2/14/2025
CENTRAL DISTRICT OF CALIFORNIA
BY: ASI  DEPUTY

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

January 2025 Grand Jury

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　Plaintiff,<br><br>　　　　v.<br><br>CHENYU ZHAO,<br>　aka "Jimmy,"<br>　aka "Xiao Yu," and<br>CHENMIAO ZHAO,<br>　aka "CiCi,"<br><br>　　　　Defendants. | CR No. 2:25-cr-00106-PA<br><br>I N D I C T M E N T<br><br>[18 U.S.C. § 371: Conspiracy; 18 U.S.C. § 549: Breaking Customs Seals; 18 U.S.C. § 545 Smuggling; 18 U.S.C. §§ 982 and 545: Criminal Forfeiture] |

　　The Grand Jury charges:

COUNT ONE

[18 U.S.C. § 371]

[ALL DEFENDANTS]

A.   INTRODUCTORY ALLEGATIONS

At times relevant to this Indictment:

1.   The San Pedro Bay Port Complex, which is comprised of the Ports of Los Angeles and Long Beach (the "San Pedro Bay Port Complex"), was the busiest cargo container port in the Western Hemisphere.  For example, in 2023, the San Pedro Bay Port Complex handled approximately 8.6 million Twenty-Foot equivalent units of cargo capacity, the most in the nation, with over $292 billion in estimated trade value during the year.

2.   The United States had established an inspection process to protect vital national security interests and otherwise ensure that goods are properly admitted into the United States.  Among other things, the law required entities or persons importing goods into the United States to make available for inspection any goods they sought to import into the United States.  Importers were also required to ensure that any cargo containers carrying their goods were securely locked prior to inspection.

3.   The United States Department of Homeland Security, United States Customs and Border Protection ("CBP") was the government agency responsible for inspecting imports.  To execute its duties at the San Pedro Bay Port Complex, CBP would search containers that CBP selected for closer inspection.  Once a cargo container was selected for inspection, the importer of the container was required to arrange for transportation of the container from the San Pedro Bay Port Complex to a designated government inspection facility.  During such

transportation, cargo containers were required to be secured with bolt security seals until reaching the designated inspection facility.

4. Defendant CHENYU ZHAO, also known as ("aka") "Jimmy," aka "Xiao Yu" ("ZHAO"), and his sister, defendant CHENMIAO ZHAO, aka "CiCi" ("C. ZHAO"), operated an import business out of a warehouse located on East Valley Boulevard in the City of Industry, California (the "East Valley Contraband Warehouse"), and directed the illegal diversion of cargo containers and arranged payments to the drivers who transported the containers and swapped the cargo contained therein.

B. OBJECTS OF THE CONSPIRACY

Beginning on an unknown date, but no later than in or around January 2024, and continuing until at least in or around February 2025, defendants ZHAO and C. ZHAO, and others known and unknown to the Grand Jury, knowingly conspired and agreed with each other to:

1. smuggle goods into the United States, in violation of Title 18, United States Code, Section 545; and

2. without authority, willfully remove customs seals placed upon vessels, vehicles, and packages containing merchandise in customs custody, in violation of Title 18, United States Code, Section 549.

//
//
//

C.  **MEANS BY WHICH THE OBJECTS OF THE CONSPIRACY WERE TO BE ACCOMPLISHED**

The objects of the conspiracy were to be accomplished in substance as follows:

1. Co-conspirators known and unknown to the Grand Jury would coordinate the shipment of tens of millions of dollars of counterfeit and other illegal goods from China to the San Pedro Bay Port Complex.

2. Defendants ZHAO and C. ZHAO would maintain and operate a warehouse to store, conceal, and sell large amounts of contraband goods that were illegally imported into the United States.

3. When containers containing counterfeit and/or other contraband goods were selected by CBP for inspection, defendants ZHAO and C. ZHAO would hire truck drivers to transport the contraband containers from the San Pedro Bay Port Complex to locations controlled by the co-conspirators, including the East Valley Contraband Warehouse, so that contraband goods could be removed from the containers before CBP inspection.

4. At locations controlled by the co-conspirators, including the East Valley Contraband Warehouse, co-conspirators known and unknown to the Grand Jury would break the security seals on shipping containers and remove contraband goods from the containers.

5. After removing the contraband goods from the containers, co-conspirators known and unknown to the Grand jury would affix counterfeit security seals onto the containers to conceal that cargo had been removed from the containers.

6. Defendants ZHAO and C. ZHAO would direct co-conspirators to transport the containers, and, after the containers had been emptied of much of their original cargo and re-secured with counterfeit

4

seals, to return them to locations authorized by CBP for the remaining cargo to be presented to CBP for inspection.

7. Defendants ZHAO and C. ZHAO would pay co-conspirators fees that were substantially above normal trucking fees to transport the contraband shipping containers.

D. <u>OVERT ACTS</u>

In furtherance of the conspiracy and to accomplish its objects, on or about the following dates, defendants ZHAO and C. ZHAO, and others known and unknown to the Grand Jury, committed various overt acts within the Central District of California and elsewhere, including, but not limited to, the following:

<u>Overt Act No. 1</u>: On January 18, 2024, using an electronic messaging application, defendant C. ZHAO sent a co-conspirator instructions about diverting a shipment containing contraband goods and offered to pay a "$10,000 Special handling fee" to the trucking company.

<u>Overt Act No. 2</u>: On January 22, 2024, a co-conspirator sent defendant C. ZHAO a text message about diverting a shipment containing contraband goods, stating: "Did invoice for Shou Zhi Yong get cancelled? . . . It was registered twice."

<u>Overt Act No. 3</u>: On January 22, 2024, in response to the message referenced in <u>Overt Act No. 2</u>, defendant C. ZHAO responded by sending an image of a check, then wrote: "BSIU9274904 Special handling fee for trucking company 10000." BSIU9274904 refers to a container that had been diverted from the San Pedro Bay Port Complex prior to its CBP inspection.

<u>Overt Act No. 4</u>: On February 5, 2024, in an electronic message to a co-conspirator, defendant C. ZHAO provided information

about diverting a shipment containing contraband goods from the San Pedro Bay Port Complex before its CBP inspection: "SEKU9337193 $10,000 Special handling fee issue a check To Mexican."  SEKU9337193 refers to a container that had been diverted from the San Pedro Bay Port Complex prior to its CBP inspection.

<u>Overt Act No. 5</u>:   On February 8, 2024, in an electronic message to a co-conspirator, defendant C. ZHAO provided information about diverting a shipment containing contraband goods from the San Pedro Bay Port Complex before its CBP inspection, stating: "FSCU5926539 demurrage fee $2310.45."  FSCU5926539 refers to a container that had been diverted from the San Pedro Bay Port Complex prior to its CBP inspection.

<u>Overt Act No. 6</u>:   On February 8, 2024, in an electronic message to a co-conspirator, defendant C. ZHAO sent an image of a check and wrote: "Also FSCU5926539 special handling fee $10,000."

<u>Overt Act No. 7</u>:   On February 23, 2024, in an electronic message to a co-conspirator, defendant C. ZHAO listed the costs for a particular set of diverted cargo containers containing contraband: "TCKU7668918 $2,455 demurrage fee / TCKU766918 $435 late drayage fee / OERU4093850 $380 demurrage fee $179.85 platform handling fee. Total $3449.85 / Operating fee for these two containers $20,000." TCKU7668918 and OERU4093850 refer to containers that had been diverted from the San Pedro Bay Port Complex prior to their CBP inspections.

<u>Overt Act No. 8</u>:   On February 23, 2024, in an electronic message to a co-conspirator, defendant C. ZHAO listed the costs for a particular diverted cargo container containing contraband: "OOCU6985991 Yijie special hand[l]ing container / $10,000 to trucking

company + $1804.05 demurrage fee = a check for $11804.05."
OOCU6985991 refers to a container that had been diverted from the San Pedro Bay Port Complex prior to its CBP inspection.

<u>Overt Act No. 9</u>:   On February 23, 2024, in an electronic message to a co-conspirator, defendant C. ZHAO sent a photo of a check and wrote: "$5000 check for truck number 2."

<u>Overt Act No. 10</u>:   On February 28, 2024, in an electronic message to a co-conspirator, defendant C. ZHAO listed the costs for a particular cargo swap: "CMAU 3520926 $10,000 operating fee, also $4,035 demurrage fee and $685 late drayage fee.  $50.25 payment transaction fee, he reduced the transaction fee for us because the fee for the trucking company and other containers were paid together."  CMAU 3520926 refers to a container that had been diverted from the San Pedro Bay Port Complex prior to its CBP inspection.

<u>Overt Act No. 11</u>:   On or before March 24, 2024, a co-conspirator caused a fraudulent security seal with the number MATU2576177 to be sent to defendant C. ZHAO at the East Valley Contraband Warehouse.  This seal number corresponded to a cargo container seized on July 5, 2024, by CPB with over $20,000,000 in counterfeit apparel, shoes, bags, and perfume.

<u>Overt Act No. 12</u>:   On or before March 30, 2024, a co-conspirator caused a fraudulent security seal with the number SZLU9427320 to be sent to defendant ZHAO at the East Valley Contraband Warehouse.

<u>Overt Act No. 13</u>:   On April 25, 2024, in an electronic message sent to a co-conspirator, defendant C. ZHAO discussed the fees associated with a particular cargo shipment of contraband: "These swaps were handled by the trucking company we found, some indicated

7

which company, those have demurrage fee were all indicated, in addition $10,000 was paid for each container to the Mexican trucking company." C. ZHAO followed her message with the following three cargo container numbers: "SEKU9121630. BSIU9274904 (Quanyi). SEKU9337193."

<u>Overt Act No. 14</u>: On June 25, 2024, defendants ZHAO and C. ZHAO possessed significant quantities of counterfeit goods – valued in the millions of dollars – and approximately 19.5 kilograms of a white powder, later identified as enobosarm, an illicit steroid, at the East Valley Contraband Warehouse.

<u>Overt Act No. 15</u>: On September 5, 2024, defendant C. ZHAO met with an individual at the East Valley Contraband Warehouse who, unbeknownst to her, was working with law enforcement (the "CS"). At that meeting, defendant C. ZHAO discussed future cargo diversions and said that she would consult with co-conspirators in China regarding past-due payments to the CS for previous cargo diversions.

<u>Overt Act No. 16</u>: On September 6, 2024, defendant C. ZHAO met with the CS outside of the East Valley Contraband Warehouse. During the meeting, defendant C. ZHAO told the CS, among other things, that she was nervous about proceeding with the cargo-swapping scheme after law enforcement executed a search warrant at the East Valley Contraband Warehouse in June 2024, but said she would be willing to continue cargo-swapping if she found a new warehouse location.

<u>Overt Act No. 17</u>: On September 12, 2024, defendant C. ZHAO sent the CS a text message in which she wrote that she and defendant ZHAO would be willing to continue diverting shipments and wanted to meet with the CS to discuss the details of moving forward with a new warehouse location.

1    Overt Act No. 18:  On or before September 20, 2024, defendant
2 C. ZHAO told the CS that she and defendant ZHAO were also looking for
3 "filler boxes" to use to replace the contraband cargo once the
4 containers were diverted.  Defendant C. ZHAO also told the CS that
5 she had noticed that CBP was marking boxes in a particular way, and
6 that she had heard from defendant ZHAO that another warehouse she was
7 familiar with was raided by law enforcement and that two individuals'
8 homes were searched as well.  Defendant C. ZHAO told the CS that she
9 only wanted to work with trusted customers moving forward.
10     Overt Act No. 19:  On October 25, 2024, defendant ZHAO met the
11 CS at the East Valley Contraband Warehouse to plan future cargo
12 container diversions.
13     Overt Act No. 20: During the October 25, 2024, meeting at the
14 East Valley Contraband Warehouse, defendant ZHAO discussed the
15 payment to the CS for coordinating the diversion of a cargo container
16 containing prohibited agricultural items.  During that conversation,
17 another co-conspirator directed the CS to remove and deliver the
18 contraband, then repack the container with "filler" goods to present
19 to CBP for inspection.  The co-conspirator told the CS that he would
20 provide the CS with a counterfeit security seal that would replicate
21 the serial number of the seal on the diverted cargo container to
22 deceive CBP and evade customs and import laws.
23     Overt Act No. 21: On January 27, 2025, after learning that law
24 enforcement had charged and arrested multiple individuals engaged in
25 a similar illegal smuggling scheme, defendant ZHAO booked a one-way
26 flight from the Los Angeles International Airport to China.
27
28

COUNT TWO

[18 U.S.C. §§ 549, 2(a), 2(b)]

[ALL DEFENDANTS]

On or about August 24, 2023, in Los Angeles County, within the Central District of California, defendants ZHAO and C. ZHAO willfully and without authority removed and caused the removal of a customs seal, namely, the seal on Container Number GLDU9359245, which at all relevant times was in the custody of United States Customs and Border Protection.

COUNT THREE

[ALL DEFENDANTS]

[18 U.S.C. §§ 545, 2(a), 2(b)]

On or about August 24, 2023, in Los Angeles County, within the Central District of California, and elsewhere, defendants ZHAO and C. ZHAO fraudulently, knowingly, and willfully caused merchandise in Container Number GLDU9359245 to be imported and brought into the United States contrary to law, and received, concealed, and facilitated the transportation and concealment of such merchandise, knowing the merchandise to have been imported and brought into the United States contrary to law, by, among other things, knowingly failing to make the required declaration, failing to obtain the required authorization to import such merchandise, and failing to transport such merchandise through designated ports of entry into the United States.

FORFEITURE ALLEGATION

[18 U.S.C. §§ 982 and 545]

1.      Pursuant to Rule 32.2(a) of the Federal Rules of Criminal Procedure, notice is hereby given that the United States of America will seek forfeiture as part of any sentence, pursuant to Title 18, United States Code, Sections 982 and 545, and Title 28, United States Code, Section 2461(c), in the event of any defendant's conviction of the offenses set forth in any Counts of this Indictment.

2.      Any defendant so convicted shall forfeit to the United States the following:

(a) All right, title, and interest in any and all property, real or personal constituting, or derived from, any proceeds obtained, directly or indirectly, as a result of each such offense;

(b)  Any and all merchandise introduced into the United States in violation of Title 18, United States Code, Section 545, or the value thereof; and

(c)  To the extent such property is not available for forfeiture, a sum of money equal to the total value of the property described in subparagraphs (a) and (b).

3.      Pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 18, United States Code, Section 982(b) and Title 28, United States Code, Section 2461(c), any defendant so convicted shall forfeit substitute property, up to the total value of the property described in the preceding paragraph if, as the result of any act or omission of said defendant, the property described in the preceding paragraph, or any portion thereof:

(a) cannot be located upon the exercise of due diligence; (b) has been transferred, sold to or deposited with a third party; (c)

has been placed beyond the jurisdiction of the Court; (d) has been substantially diminished in value; or (e) has been commingled with other property that cannot be divided without difficulty.

A TRUE BILL

/S/
Foreperson

JOSEPH T. MCNALLY
Acting United States Attorney

DAVID T. RYAN
Assistant United States Attorney
Chief, National Security Division

IAN V. YANNIELLO
Assistant United States Attorney
Chief, Terrorism and Export
Crimes Section

AMANDA B. ELBOGEN
Assistant United States Attorney
Terrorism and Export Crimes
Section

COLIN S. SCOTT
Assistant United States Attorney
Terrorism and Export Crimes
Section

13